# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 00-1267

DANA L. MYERS, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 8, 2002                    Decided   August 13, 2002  )

*James C. McKay*, of Washington, D.C., for the appellant.

*David J. Lowenstein*, with whom *Tim S. McClain*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Darryl A. Joe*, Acting Deputy Assistant General Counsel; and *Kathy A. Banfield*, all of Washington, D.C., were on the brief, for the appellee.

Before KRAMER, *Chief Judge*, and IVERS and STEINBERG, *Judges*.

STEINBERG, *Judge*:  The appellant, through counsel, seeks review of a June 15, 2000, decision of the Board of Veterans' Appeals (Board or BVA) that denied an effective date earlier than January 28, 1994, for an award of Department of Veterans Affairs (VA) service connection for his back condition.  Record (R.) at 4.  The Board reached this conclusion by reasoning that an April 1958 VA regional office (RO) decision was a "final decision" that the appellant did not appeal and therefore could not provide the basis for an earlier effective date (EED).  R. at 3, 8-9.  The appellant and the Secretary have both filed briefs, and the appellant has filed a reply brief.  The Court heard oral argument from the parties on February 8, 2002, and thereafter ordered briefing on five issues raised during oral argument.  *Myers v. Principi*, 15 Vet.App. 428 (2002) (per curiam order) [hereinafter *Myers II*].  The Secretary has filed a response, and the appellant has filed a reply thereto. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

For the reasons that follow, the Court will reverse the Board decision and remand the matter for the assignment of an effective date and a rating or ratings, as appropriate.

## I. Relevant Background

The veteran served honorably in the U.S. Marine Corps from January 1956 to December 20, 1957. R. at 37. In March and November 1957, he was admitted to a U.S. naval hospital for treatment of back pain. R. at 23-35. During his treatment in November 1957, he was diagnosed with a congenital back deformity, "spondylolysis, L4, L5, without spondylolisthesis". R. at 27-28. A Naval Board of Medical Survey deemed him "[u]nfit for duty" and recommended that he be discharged from service because of this condition. R. at 28. According to service medical records, in 1955, prior to his entry into the service, he "fell 30 feet from a bridge and landed on his back"; this incident caused his injury, which was "aggravated by prolonged standing or walking". R. at 27. In a 1995 VA Form 1-9 Substantive Appeal to the BVA, the veteran asserted that this account of his injury was incorrect and that, instead, he had "slipped down an embankment by a bridge at that time [in 1955], with no injuries". R. at 150.

In February 1958, two months after his discharge, the veteran made his first claim for service connection for his back condition (R. at 39-42); the VARO denied that claim in April 1958 (R. at 44) and sent notice of that decision to the veteran on May 2, 1958 (R. at 49). The RO advised the veteran that he had one year to appeal if he wished to do so and that, if he "so inform[ed]" that office, he would "be furnished [a] VA Form 1-9 for that purpose". R. at 49. On April 20, 1959, the RO received a letter from the veteran, stating, in pertinent part:

> This letter is in regards to my claim which was filed in San Diego last year. The claim was turned back because it was said that my condition [was] not incurr[ed in] nor was aggr[a]vated by my military service. I would like to have a copy of that letter so that I may refile my claim as soon as possible. The letter that was given to me has gotten lost somewhere so I will need another copy. Also, please send me instructions of how to go about reopening my claim. My condition has become worse since my release from the service. I feel that I should be able to get something to justify it because I was never bothered with my back until after I had already served fourteen months of my enlistment period.

Please send me all materials as soon as possible so that I may get
this claim reopened as soon as can be arranged.

R. at 56. On June 2, 1959, an RO verified its receipt of his letter and informed him: "Such evidence as you may wish to submit to reopen your claim must show that it [sic] was incurred during service." R. at 62. In June 1960, the RO "confirmed and continued" the prior denial of service connection (R. at 79) and informed the veteran that "[t]he evidence does not warrant any change in the previous determination" (R. at 78). In October 1986 and April 1988, the RO again denied his claims to reopen because it found that the evidence presented was not new and material. R. at 89, 106.

The veteran filed in February 1994 still another claim to reopen (R. at 109), which the RO denied (R. at 128-30), and the veteran subsequently appealed to the Board (R. at 137-38). In January 1997, the Board reopened his claim and remanded the matter to the RO. R. at 181-89. In June 1997, the RO awarded service connection for "chronic lumbosacral strain aggravating pre-existing L5-S1 spondylolisthesis", rated at 40% from January 28, 1994 (with a 100% rating for the period from February 14, 1996, through March 31, 1996, for treatment that necessitated convalescence). R. at 219-22. In June 1997, the veteran requested an EED by submitting a statement-in-support-of-claim form, in which he stated: "My first appeal was filed in 1958 . . . . Please explain why I was only compensated from 1994 to present." R. at 242. The RO denied an EED (R. at 273), as did the Board (R. at 283-89), and the veteran appealed to this Court.

In October 1999, the Court vacated the January 1998 BVA decision because the Board failed to provide an adequate statement of reasons or bases for its decision and remanded the matter for readjudication. *Myers v. West*, No. 98-864, 1999 WL 1023785 at *4-6 (Oct. 22, 1999) [hereinafter *Myers I*]; R. at 291-98. The Court noted the Board's failure to analyze thoroughly the finality of the April 1958 RO decision or to refer to authority supporting its conclusion. *Id*. at *5. The Court concluded that should the 1959 letter constitute an application for review on appeal, "then it would appear that the RO's November 1994 [Statement of the Case (SOC)] may have been a part of the adjudication of an original, rather than a reopened, claim, and the Board's effective-date determination must consider the application of 38 U.S.C. § 5110(b)(1)". *Myers I*, 1999 WL 1023785 at *6.

3

On remand, in the BVA decision here on appeal, the Board determined that it could award an EED only if it found that, in response to the 1958 RO decision, the veteran had "filed an appeal . . . [rather than] submitted instead an application to reopen his claim". R. at 7. The Board reasoned that "the letter from the veteran contains all the information required then by regulation to constitute an application for appeal[] and would be considered as such by the current Board if the veteran had not expressed specifically and without qualification an intent for some other course of action". R. at 8. In examining the veteran's intent, the Board evaluated the letter that he wrote to the RO in April 1959, and concluded:

> He did not use the word ["]appeal["] or state words to the effect that he wished to challenge that determination. The RO had instructed him that if he wished to appeal, he should inform "this office," and they would furnish [to] him [a] VA Form 1-9 for that purpose. He did not indicate in his statement of June 1959 that he wished to appeal.

R. at 7-8. Furthermore, the Board found:

> [W]hen his claim in 1959, construed as a claim to reopen, was denied and he was given the opportunity to appeal, he did not do so. Frankly, the Board feels that if the veteran had intended to appeal the 1958 decision in his correspondence received in May 1959, he would have certainly appealed the 1960 decision denying his claim or at least have clarified his intent regarding his earlier claim.

R. at 8.

## II. Contentions on Appeal

In his principal brief, the appellant argues, inter alia, that the Board decision should be reversed because his April 1959 letter "constituted a valid application for review on appeal" pursuant to 38 U.S.C. § 4005 (1958). Brief (Br.) at 9-11. The appellant asserts that the Board erred by focusing on his decision not to appeal the June 1960 decision and that instead the Board should have focused on the obvious intent stated in the 1959 letter. Br. at 11. The appellant also argues that because an SOC was never issued as to the 1958 RO decision, under *Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995), the 1958 RO decision is not final and therefore the Court should reverse the Board

4

decision and assign an effective date of February 8, 1958 (Br. at 14-16, 19), the date of his original claim (R. at 39-42).

The Secretary counters that, under current 38 U.S.C. § 5110(a), January 28, 1994, the date on which the appellant filed his claim to reopen, is the correct effective date. Br. at 8. In support of his argument that reversal is improper because the veteran failed to file a timely application for review on appeal (Br. at 9), the Secretary urges that the Court has an "obligation to review both the actual wording of a communication and the context in which the communication was written in order to determine whether the statement qualified as a [Notice of Disagreement (NOD)] in 1959" (Br. at 15-16). The Secretary further argues that the Court also should look to the "circumstances surrounding the letter", including, inter alia, (1) the failure of the appellant to file an appeal after the RO "informed him of the evidence needed to substantiate his claim" (R. at 62); (2) his failure to appeal the 1960 (R. at 78), 1986 (R. at 89), and 1988 (R. at 106-07) RO decisions; and (3) his admission, through his representative, that the 1958 RO decision "became final when the veteran failed to perfect an appeal within the one[-]year time period as prescribed by law" (R. at 279). Br. at 16-17.

Following oral argument, the Court ordered supplementary briefing by the Secretary as to whether, under 1958 and current law and regulation, (1) the correspondence lawfully could have been a claim to reopen, (2) the appellant had the right to submit additional evidence at the time of the correspondence, and (3) the obligation is applicable "to construe liberally towards a claimant" law, regulation, and pleadings; the Court also ordered briefing regarding (4) legislative history relating to section 4005(e), and (5) the meaning of the RO's May 1958 reference to the use of VA Form 1-9. *Myers II*, 15 Vet.App. at 428-29.

In response to the Court order, the Secretary asserts that the veteran could have lawfully, within the one-year period after the date of the RO's decision, requested that his claim be reopened or presented additional evidence on the original claim. Response (Resp.) at 1-2. With regard to the rule of liberal construction, the Secretary argues that although that rule was in effect in 1958 when the veteran's claim was adjudicated before the RO, it is not implicated here because his 1959 correspondence "explicitly" referred to "reopen[ing]" and "refil[ing]" his claim, rather than "appeal[ing]" it. Resp. at 2-3. The Secretary also submitted legislative history that he contends

supports his reading of 38 U.S.C. § 4005(e) (1958) that "should" in section 4005(e) retained the meaning of "must" as it was originally written in Veterans Regulation No. 2 from March 1933. Resp. at 4-7, Exhibit (Exh.) A. With regard to the reference to VA Form 1-9, the Secretary notes that he was unable to "uncover the statutory or regulatory genesis" of the procedure but argues, instead, that a "VA manual[] extant at the time" of the 1959 letter referred to the Form. Resp. at 7, Exh. D; VA Manual 8-5, Adjudication Procedure, 1956 Changes, para. 137 [hereinafter "Manual 8-5" or "the Manual"].

In the appellant's reply, he argues, inter alia, (1) that there was no indication in his 1959 correspondence that he wished to present evidence in support of his claim and thus he was not attempting to reopen his claim (Reply at 1-2); (2) that the change of the word "must" in VA Regulation No. 2 to "should" in section 4005(e) simply reflects "that the requirement became discretionary and not mandatory" (Reply at 3); and (3) that VA failed to examine the veteran's 1959 letter, which expressed "dissatisfaction following rating . . . action", in order to determine, as required by Manual 8-5, whether there was "procedural, regulatory, or factual error in adjudication or other circumstances warranting further development or corrective action", and that VA failed to send him a Form 1-9, as then required by Manual 8-5 (Reply at 3-4).

### III. Analysis

#### A. 1959 Letter as an Application for Review on Appeal

In the decision now on appeal, the Board found on remand that the appellant's 1959 letter "contain[ed] all the information required then by [statute and] regulation to constitute an application for appeal". R. at 8. Because that determination is favorable to the appellant, there may be a serious question whether, under *Nolen v. Gober*, the Court could alter that conclusion. *Nolen*, 222 F.3d 1356, 1360 (Fed. Cir. 2000) (holding that once Secretary had determined that claim was well grounded, that determination had served its "gatekeeping/triggering function" and "los[t] its force", and, therefore, it was improper for Court to reconsider matter). Neither this Court nor the U.S. Court of Appeals for the Federal Circuit has held whether this Court can disturb a favorable Board determination. However, this is not the appropriate case to reach that question, because, for the reasons set forth below, we agree with the Board's conclusion that the 1959 letter met the criteria for

an application for review on appeal. We also note that it may be questionable for the Secretary to argue, in apparent contradiction of the Board's determination, that the letter does not satisfy the statutory requirements for an application for review on appeal. *See* 38 U.S.C. § 7252(a) (providing that Secretary may not seek review of any Board decision). Again, in light of our independent review, we need not further address this question in the instant case.

Following the RO's May 1958 denial of the veteran's original claim for service connection, he expressed in his April 1959 letter (quoted, in pertinent part, in part I, above) the desire to "refile" his claim that "was turned back because it was said that [his] condition [was] not incurr[ed] nor was aggr[a]vated by [his] military service" and asked for "instructions of how to go about reopening [his] claim". R. at 56. At that time, 38 U.S.C. § 4005 contained the requirements for an application for review on appeal, including that the application be filed within one year after the date of mailing of notice of the RO decision being appealed. 38 U.S.C. § 4005(a) (1958). Furthermore, the statute then provided in pertinent part:

> (d) In each application for review on appeal the name and service of the veteran on account of whose service the claim is based must be stated, together with the number of the claim and the date of the action from which the appeal is taken. The application must clearly identify the benefit sought.

> (e) Each application for review on appeal should contain specific assignments of the alleged mistake of fact or error of law in the adjudication of the claim. Any application which is insufficient may be dismissed.

38 U.S.C. § 4005(d), (e) (1958); *see* 38 C.F.R. § 19.2 (1956) (providing no additional guidelines for application for review on appeal).

In the BVA decision on appeal, the Board reasoned that the 1959 letter was not an application for review on appeal because the veteran did not use the proper language in that letter, did not send to the RO a subsequent statement of that intent, and did not appeal the 1960 RO decision, which "[f]rankly, the Board *feels*" he would have done had he intended to appeal the 1958 decision. R. at 7-8 (emphasis added). The Board summarized its decision as follows: "Accordingly, the Board cites the specific language used by the veteran [in] his May 1959 correspondence and his decision not to appeal the 1960 decision as ***conclusive evidence*** of his intent not to appeal the 1958 decision." R. at

8 (emphasis added). The Board's reasoning regarding the veteran's decisions not to appeal later determinations, as well as the Secretary's similar argument, is inherently flawed: Neither the Board nor the Court can look ahead in time to determine what happened in the past. The issue of law before the RO and the Board, and now before the Court, is not what the veteran intended, subjectively, by his 1959 letter as divined from *his subsequent actions between that time and the present*, but rather whether the content of that letter objectively satisfied the criteria for an application for review on appeal under then-existing law, 38 U.S.C. § 4005 (1958). Furthermore, the Board's determination that the veteran's decision not to appeal a *later* decision was "conclusive evidence" of the veteran's intent not to appeal a *prior* decision has no support in the law or in logic.

### 1. Compliance with Section 4005(d)

As to the content requirements of the statute, as required by section 4005(d), the veteran included in the 1959 letter his name ("Dana LeRoy Myers"), service ("my military service"), claim number ("C 20 696 280"), and date of the prior action ("last year"). R. at 56; 38 U.S.C. § 4005(d) (1958). This subsection of the statute also required that the application "clearly identify the benefit sought"; the veteran described his claim that "was turned back because it was said that my condition [was] not incurr[ed] nor was aggr[a]vated by my military service", thereby implicitly referring to his claim as one for service connection. R. at 56. Moreover, he stated that he felt he "should be able to get something to justify [his disability]", thereby, in his own words, *requesting* service connection. *Ibid.*; 38 U.S.C. § 4005(d) (1958).

As to the BVA finding that the appellant had not indicated specifically to the RO that he wanted to appeal (R. at 7-8), the Secretary provides a copy of an excerpt from Manual 8-5, which, under the heading "Informal Appeals", was amended by VA in 1956 to provide, in pertinent part:

> While appeals should not be invited, it is important that the statutory right of appeals be in nowise restricted. Whenever a claimant *expresses dissatisfaction* following rating or other adjudicative action, it should be determined whether there has been procedural, regulatory, or factual error in adjudication or other circumstances warranting further development or corrective action. Unless it is determined that there is entitlement to substantially all benefits sought, the veteran should be furnished with VA Form 1-9 . . . , together with the necessary instructions relative to its

> completion, without effort to dissuade him from the presentation of
> a formal appeal.

Manual 8-5 (emphasis added). The Court notes that the precursor to 38 U.S.C. § 4005 (1958) was 38 U.S.C. § 3305 (1957) and that, prior to 1957, this provision existed in executive orders codified as VA Regulation No. 2 from March 1933 and No. 2(A) from July 1933; these four provisions are identical in substance, as is relevant to the instant appeal (VA Regulation No. 2 mandated that applications for review on appeal be filed within six months, but the other three provisions contained one-year filing deadlines). Therefore, when VA, in Manual 8-5, wrote in 1956 a regulation under the heading of "Informal Appeals" that required only that the veteran ***"express[] dissatisfaction"*** with an RO decision, VA was interpreting the then-extant VA Regulation No. 2 and the subsequent statutes codified in sections 3305 in 1957 and 4005 in 1958. Because there were no amendments to the Manual in 1958 (Resp. at 7 n.1), the Court finds that VA's interpretation is controlling, *see Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-45 (1984) (establishing that where statute does not directly address precise question at issue, Court should follow agency regulation as long as "based on a permissible construction of the statute" and not "arbitrary, capricious, or manifestly contrary to the statute"); *cf. Brown v. Gardner*, 513 U.S. 115, 122 (1994) (holding that long-standing agency interpretations that have not been subject to judicial review are not due deference simply because of their longevity), and that the veteran expressed, in his own words, that he was dissatisfied with the RO decision when he stated that his claim "was turned back" and that he "should be able to get something to justify [his disability]". R. at 56; Manual 8-5. Therefore, the Court agrees with the Board's implicit determination that the appellant complied with 38 U.S.C. § 4005(d) (1958).

### 2. Compliance with Section 4005(e)

The parties disagree over whether subsection 4005(e) is mandatory or permissive, because it details that the application for review "***should*** contain specific assignments of the alleged mistake of fact or error of law". 38 U.S.C. § 4005(e) (1958). The Secretary argues that the provision states a mandatory condition (Br. at 11-12), whereas the appellant counters that "should", together with the clause, "[a]ny application which is insufficient ***may*** be dismissed", allows for discretion on the part of the VA adjudicator (Reply Br. at 3). Although the provision's plain meaning strongly suggests

that a discretionary authority is granted, the Court need not reach that issue, because, as the Board determined, we hold that the appellant's 1959 correspondence satisfied any potential requirements under section 4005(e), which directed that the veteran should make "specific assignments of the alleged mistake of fact *or* error of law in the adjudication of the claim". 38 U.S.C. § 4005(e) (1958) (emphasis added). Speaking about his back condition, the veteran asserted in his 1959 correspondence: "I feel that I should be able to get something to justify it because I was never bothered with my back until after I had already served fourteen months of my enlistment period." R. at 56. The veteran's statement is sufficient to constitute an "alleged mistake of fact," i.e., that his back injury was aggravated by service. Furthermore, this statement might also be sufficient to be considered an "alleged . . . error of law", i.e., that the Board erred in not awarding service connection, but because we find an "alleged mistake of fact", the Court need not reach that question.

### 3. Board's Construction of the Status of the 1959 Letter

For purposes of our analysis of the Board's determination that the 1959 letter constituted a claim to reopen, we assume, arguendo, that the Secretary is correct in his assertion that the appellant, within the one-year period after the RO decision, could have filed a claim to reopen. Resp. at 1-2. The Court will also assume, arguendo, that although the letter was not accompanied by new evidence, it met the applicable statutory and regulatory requirements of a claim to reopen, *see* 38 U.S.C. § 4004 (1959); 38 C.F.R. § 19.5 (1956). Because, as determined in parts III.A.1. and III.A.2., above, and as the Board determined, the 1959 letter satisfied all requirements and criteria for an application for review on appeal, we must determine whether the Board erred in its June 2000 decision when it failed to so construe the 1959 letter and instead concluded that the 1958 RO decision had become final. R. at 8-9.

With regard to the Secretary's duty to construe liberally law, regulation, and papers submitted by the appellant at the time of the RO and BVA decisions, the Secretary concedes:

> The theories of "liberal construction" and "interpretive doubt" would have compelled the . . . RO to construe [the] [a]ppellant's written submissions in the light most favorable to the veteran within the confines of law. The pro-claimant aims of the adjudicative system would have compelled the RO to take action most beneficial to [the] [a]ppellant, given the circumstances presented. However,

these theories cannot be used to circumvent or supercede the clear statutory requirements imposed by Congress.

Resp. at 3; *see also* 38 C.F.R. § 3.63 (1956) (noting the "defined and consistently applied policy of the Veterans' Administration to administer the law under a broad and liberal interpretation consistent with the facts shown in each case"). Because of our holding that the 1959 letter met the criteria for an application for review on appeal, we reject the Secretary's argument that the rule of liberal construction is not implicated in this case and we also hold that the BVA erred by failing both to apply that rule and to find, therefore, that the 1959 letter constituted an application for review on appeal, the determination that was more favorable to the veteran. We next consider the effect of this holding.

## B. Effect of Finding that 1959 Letter Constitutes an Application for Review on Appeal

"[W]here VA has failed to procedurally comply with statutorily mandated requirements, a claim does not become final for purposes of appeal to the Court." *Tablazon*, *supra*. In *Tablazon*, the Court concluded: "[B]ecause the RO did not furnish the appellant with an SOC, he was unable to file a formal appeal to the BVA, and the . . . [RO] decision never became final." *Ibid.* In the instant case, the veteran submitted an application for review on appeal, but the RO never took further action in response to that document, which had placed his claim in appellate status. He was not sent a VA Form 1-9, as required by the VA procedures then enumerated in Manual 8-5, nor did he receive a further BVA decision regarding his claim. *See* R. at 1-313. Therefore, as the Court held in *Fenderson v. West*, this claim is, "as a matter of law, [an] original claim[] that [was] placed in appellate status by [an] NOD[] [(here, an application for review on appeal)] expressing disagreement with [an] initial rating award[] and never ultimately resolved until the Board decision on appeal". *Fenderson*, 12 Vet.App. 119, 125 (1999); *see also Holland v. Gober*, 10 Vet.App. 433, 436 (1997) (per curiam order) (vacating BVA decision and remanding matter where VA failed to issue SOC after claimant submitted timely NOD); *cf. Woods v. Gober*, 14 Vet.App. 214, 221 (2000) (remanding EED-claim issue when RO failed to notify appellant of its decision and appellant's claim therefore remained open). In other words, because that 1958 claim was still open in January 1997 when the Board, issuing its first decision on this matter, reopened his claim and remanded it to the RO and in June 1997 when the RO awarded service connection for his back condition (R. at 219-22), the

11

veteran's original service-connection claim is part of the current claim stream. *See Fenderson*, *supra*. The RO's 1960, 1986, and 1988 denials of reopening for lack of new and material evidence were not relevant to the continued appellate status of the veteran's 1958 claim because the RO was obliged by the April 1959 application for review on appeal to issue an SOC (not a new RO decision) in order to permit the veteran to perfect his appeal to the Board by filing a Form VA 1-9 (or comparable document), and it never did so.

Where a veteran applies for benefits within one year after the date of discharge, the effective date of an award of "disability compensation" is the day following the date of discharge. 38 U.S.C. § 5110(b)(1). In the instant case, the veteran was discharged from service on December 20, 1957 (R. at 37), and, as the Board found (R. at 4), his application for benefits was received by the RO in February 1958 (R. at 42), well within the one-year deadline. *See* 38 U.S.C. § 5110(b)(1). Under section 5110(b)(1), there is no basis in the record on appeal (ROA) for an effective date of the award of service connection for the appellant's back condition other than the day after the date of discharge, *see Perry (Earl) v. West*, 12 Vet.App. 365, 369 (1999) (specifying proper effective date and reversing BVA decision and remanding matter for assignment of that effective date); however, because it is possible that not all of the material that may bear on this question was included in the ROA, the Court will vacate the Board decision and remand the matter to the Board to assign an appropriate effective date.

Unless the Board concludes on remand, based on material not in the ROA, that an effective date of the day after the date of discharge is not warranted, the Board must consider two matters: First, the Board must consider whether an award of staged ratings is appropriate under *Fenderson*, *supra* (holding that Board may award staged ratings in adjudicating "assignment of an initial rating for a disability following an initial award of service connection for that disability"); *cf. Francisco v. Brown*, 7 Vet.App. 55, 58 (1994) (finding no Board error where Board focused on most recent medical evidence in claim for increased disability rating not part of adjudication of initial service-connection award). Second, the Board should consider whether section 5110 requires the assignment of a rating of at least 10%, effective from the day after the date of discharge. *Compare* 38 U.S.C. § 5110(b)(1) *with* 38 U.S.C. § 5110(b)(2). Specifically, the Court notes that section 5110(b)(2) requires that the "effective date of an award of increased compensation" be the "***earliest date*** as of

which it is ascertainable that an increase in disability had occurred", whereas section 5110(b)(1) requires that the "effective date of an award of *disability compensation*" be the day after the date of discharge, if the veteran meets the one-year filing deadline. The difference in the statutory language might suggest that although the effective date for an *increase in compensation* depends on the date of the increase in disability, in determining the effective date for an initial award of *disability compensation* where application therefor is made within the year after discharge, such *compensation* shall be paid as of the day after the date of discharge, and, therefore, as of that date, actual *compensation* must be paid; in other words, as of the day after the date of discharge, the claimant must receive at least a 10% disability rating, which is the minimum rating under which a claimant receives "disability compensation". 38 U.S.C. § 5110(b)(1), (b)(2).

## IV. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the submissions of the parties, the Court reverses the June 15, 2000, BVA decision and remands the matter for the assignment of (1) an effective date for the initial award of service connection and (2) a rating or ratings, as appropriate. On remand, the Board is to provide expeditious adjudication and issuance of a decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1131, 5110(b)(1), 7104(a), (d)(1); 38 U.S.C. § 4005(d), (e) (1958); 38 C.F.R. § 19.2 (1956); *Fenderson*, *supra*, and *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) (noting that "[t]he Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case"), all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court) [hereinafter VBIA § 302]; *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (2001) (holding that VBIA § 302 applies to all elements of claim remanded by Court or Board), and with all applicable law and regulation. *See Allday v. Brown*, 7 Vet.App. 517, 533-34 (1995). On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order) (concluding that an appellant is entitled, until

13

90 days after Board mails postremand notice to appellant, to submit additional evidence and argument or to request hearing on appeal at which appellant may submit new evidence), and all applicable law and regulation. The Court notes that a remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

REVERSED AND REMANDED.