GREENE, Chief Judge,
dissenting:
Although I agree with Judge Kasold’s analysis, I write separately to highlight a few points. Mr. Ortiz’s March 1980 statement in support of claim and his May 12, 1980, letter indicate that he believed he had filed a VA Form 1-9 in November 1979 with regard to his claim and administrative appeal, within 60 days after receiving the October 1979 SOC. The June 1980 response from the Secretary, which notably was addressed to another person and no copy of the VA Form 1-9 that was purportedly sent with the letter is contained in the record on appeal, informed Mr. Ortiz that his VA Form 1-9 had not been received and that he should complete a new VA Form 1-9 and send it back to the RO within 30 days or else no further action would be taken on his appeal. In *366 1980 VA regulation provided that after an NOD was filed, the RO had discretion to close a case only if no response was received to the SOC. See 38 C.F.R. § 19.121(a) (1980).
Assuming arguendo that Mr. Ortiz had actually received the letter, he understood that it was directed to him, and that he had been provided another VA Form 1-9, his March and May 1980 submissions to the RO, which were each made in response to the October 1979 SOC, were submitted within one year of the September 1979 RO decision. As required by section 4005(d)(3), any questions as to the timeliness or adequacy of those documents should have been resolved by the Board. See Tropf v. Nicholson, 20 Vet.App. 317, 321 n. 1 (2006) (“[A] statute is ambiguous only when the application of the ordinary meaning of the words and rules of construction to the plain language of the regulation fails to answer the question at issue .... Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or-more importantly-veteran can x-ely on a statute or regulation to mean what it appears to say.”); see also Gardner v. Derwinski, 1 Vet.App. 584, 586 (1991) (“Determining a statute’s plain meaning requires examining the specific language at issue and the overall structure of the statute.”), aff'd sub nom. Gardner v. Brown, 5 F.3d 1456 (Fed.Cir.1993), aff'd, 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); 38 C.F.R. § 19.121(a) (1980). Thus, the RO erred by closing Mr. Ortiz’s case before forwarding his March and May 1980 statements to the Board to liberally read the documents and determine the timeliness and adequacy of the responses to the SOC. See 38 U.S.C. § 4005(d)(3); 38 C.F.R. §§ 19.116, 19.121(a) (1980). Therefore, without following that requirement, the claim remained pending until a decision was made as to the timeliness and adequacy of Mr. Ortiz’s responses by the Board. 38 C.F.R. § 3.160(c) (2009) (“pending claim” is “[a]n application, formal or informal, which has not been finally adjudicated”); see Myers v. Principi, 16 Vet.App. 228, 235 (2002) (holding that claim remains open after it is placed in appellate status and before resolution by Board); see also Tablazon v. Brown, 8 Vet.App. 359, 361 (1995) (claim remains pending where RO fails to follow procedures by issuing SOC after claimant files timely NOD).
Although the Board in the August 2005 decision here on appeal finally made a determination regarding the adequacy of Mr. Ortiz’s March and May 1980 statements, that decision does not negate the 25 year period that the claim was pending before the decision was made. See Myers and Tablazón, both supra. As stated above, in March 2000, the RO awarded Mr. Ortiz service connection for bipolar disorder with a 70% disability rating and a rating of TDIU. Because this award was granted while Mr. Ortiz’s claim was still pending, I would hold that the Board erred by not considering the entire period for which the claim was pending to determine the proper effective date. See 38 U.S.C. § 5110(a). Accordingly, I must dissent.