﻿Citation Nr: AXXXXXXXX
Decision Date: 03/19/19 Archive Date: 03/19/19

DOCKET NO. 181128-1525
DATE: March 19, 2019

ORDER

An effective date of August 5, 2011, but no earlier, for the grant of a 70 percent evaluation for schizophrenia is granted.

An effective date of August 5, 2011, but no earlier, for the grant of a total disability rating due to individual unemployability (TDIU) is granted.

FINDINGS OF FACT

1. The earliest pending claims for entitlement to service connection for schizophrenia and for entitlement to a TDIU were August 5, 2011. 

2. Evidence of record does not show a factually ascertainable increase in disability warranting assignment of an increased evaluation for schizophrenia or entitlement to a TDIU occurred prior to August 5, 2011.

3. Since August 5, 2011, the Veteran’s schizophrenia has caused occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood and prevented substantially gainful employment.

CONCLUSIONS OF LAW

1. The criteria for the assignment of an effective date of August 5, 2011, but no earlier, for the award of a 70 percent evaluation for schizophrenia have been satisfied. 38 U.S.C. § 5110; 38 C.F.R. §§ 3.102, 3.400, 4.130, Diagnostic Code 9205.

2. The criteria for the assignment of an effective date of August 5, 2011, but no earlier, for the award of entitlement to a TDIU have been satisfied. 38 U.S.C. §§ 5107, 5110; 38 C.F.R. §§ 3.102, 3.400, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran had active service in the United States Marines Corps from September 1993 to September 1977. The matters are on appeal from a September 2018 decision, which granted a 70 percent evaluation for schizophrenia and entitlement to a TDIU, effective September 19, 2017.

Earlier Effective Dates 

A reasonably raised claim remains pending until there is either recognition of the substance of the claim in a RO decision from which a claimant could deduce that the claim was adjudicated or an explicit adjudication of a subsequent “claim” for the same disability. See Deshotel v. Nicholson, 457 F.3d 1258, 1261 (Fed. Cir. 2006) and Myers v. Principi, 16 Vet. App. 228, 229 (2002); 38 C.F.R. § 3.160(c).

VA law and regulation provide that unless otherwise provided, the effective date of an award of increased evaluation shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of the application therefor. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. Regulations also provide that the effective date of an evaluation and award of compensation based on a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 C.F.R. § 3.400(o)(1).

The Board notes that the effective date of an award of increased compensation may, however, be established at the earliest date as of which it is factually ascertainable that an increase in disability had occurred, if the application for an increased evaluation is received within one year from that date. 38 U.S.C. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2).

Three possible dates may be assigned depending on the facts of a case: (1) if an increase in disability occurs after the claim is filed, the date that the increase is shown to have occurred (date entitlement arose) (38 C.F.R. § 3.400(o)(1)); (2) if an increase in disability precedes the claim by a year or less, the date that the increase is shown to have occurred (factually ascertainable) (38 C.F.R. § 3.400(o)(2)); or (3) if an increase in disability precedes the claim by more than a year, the date that the claim is received (date of claim) (38 C.F.R. § 3.400(o)(2)). See Harper v. Brown, 10 Vet. App. 125, 126 (1997).

Thus, determining an appropriate effective date for an increased rating under the effective date regulations involves an analysis of the evidence to determine (1) when a claim for an increased rating was received and, if possible, (2) when the increase in disability actually occurred. 38 C.F.R. §§ 3.155, 3.400(o)(2). 

Under applicable laws and regulations, if an increase in disability occurred within one year prior to the claim, the increase is effective as of the date the increase was “factually ascertainable.” If the increase occurred more than one year prior to the claim, the increase is effective the date of claim. If the increase occurred after the date of claim, the effective date is the date of increase. 38 U.S.C. § 5110(b)(2); Harper v. Brown, 10 Vet. App. 125 (1997); 38 C.F.R. § 3.400 (o)(1) 2); VAOPGCPREC 12-98 (1998). In making this determination the Board must consider all of the evidence, including that received prior to previous final decisions. Hazan v. Gober, 10 Vet. App. 511 (1997).

VA recognizes formal and informal claims. A formal claim is one that has been filed in the form prescribed by VA. See 38 U.S.C. § 5101(a); 38 C.F.R. § 3.151(a). An informal claim may be any communication or action, indicating an intent to apply for one or more benefits under VA law. Thomas v. Principi, 16 Vet. App. 197 (2002); see 38 C.F.R. §§ 3.1(p), 3.155(a). An informal claim must be written, see Rodriguez v. West, 189 F. 3d. 1351 (Fed. Cir. 1999), and it must identify the benefit being sought. Brannon v. West, 12 Vet. App. 32, 34-5 (1998). All filings by a claimant must be construed based on a liberal reading. See Robinson v. Shinseki, 557 F.3d 1355, 1361 (Fed. Cir. 2009) (holding that “[i]n direct appeals, all filings must be read ‘in a liberal manner’ whether or not the veteran is represented”).

Furthermore, according to 38 C.F.R. § 3.157(b), once a claim for compensation has been allowed, receipt of a VA outpatient or hospital examination or admission to a VA hospital will be accepted as an informal claim for increased benefits. See Servello, 3 Vet. App. at 199. The date on the VA outpatient or hospital examination will be accepted as the date of claim. 38 C.F.R. § 3.157(b). When the evidence is from a private physician, the date of receipt of such evidence will be accepted as the date of receipt of an informal claim. Id. at (b)(2).

An October 2014 rating decision granted the Veteran service connection for schizophrenia, and assigned an initial 30 percent disability rating, effective August 5, 2011, the date the Veteran’s claim was received. A notice of disagreement was filed regarding the initial disability rating in November 2014. The November 2014 NOD also raised the TDIU issue.

In January 2015, the Agency of Original Jurisdiction (AOJ) denied entitlement to 

a TDIU. The Veteran filed a notice of disagreement in February 2015. In May 2017, the AOJ granted a 50 percent evaluation for schizophrenia, effective November 15, 2016. The Veteran filed a notice of disagreement with the effective date and evaluation assigned for his schizophrenia in July 2017. Lastly, in a September 2018 rating decision, the AOJ granted a 70 percent evaluation for schizophrenia and a TDIU, effective September 19, 2017. The most recent notice of disagreement and RAMP election was received in November 2018.

The effective dates of the increased 70 percent rating for schizophrenia and the TDIU could potentially be made retroactive to the date of award of service connection for his schizophrenia (August 5, 2011) because what is presented to the Board, in essence, is a NOD with the initial rating assigned by the October 2014 rating decision. 

1. Entitlement to an effective date prior to September 19, 2017, for the grant of a 70 percent evaluation for schizophrenia.

The Board notes that schizophrenia is rated pursuant to the criteria for General Rating Formula. 38 C.F.R. § 4.130, Diagnostic Code 9205. 

Under the general rating formula, a 50 percent rating requires occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and, difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent rating requires occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affected the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); and, inability to establish and maintain effective relationships. Id.

A 100 percent rating is assigned when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and, memory loss for names of close relatives, own occupation, or own name. Id. 

The Board notes that in accordance with the General Rating Formula, a maximum 100 percent rating is applicable if the manifestations of the service-connected psychiatric disorder result in total occupational and social impairment. Although the rating formula lists specific symptoms that are indicative of total impairment, the U.S. Court of Appeals for Veterans Claims has held that the symptoms listed in the rating formula are only examples, and that evidence of those specific symptoms is not required to show that the veteran is totally disabled. 

In rating a mental disability, VA is required to consider all symptoms that affect her social and occupational functioning, and not limit consideration to those symptoms listed in the rating formula. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). In other words, the primary consideration is whether the manifestations of the service-connected psychiatric disorder result in total social and occupational impairment, regardless of whether the Veteran demonstrates the symptoms listed in the rating formula.

When evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126.

An October 2014 rating decision granted the Veteran service connection for schizophrenia with an initial 30 percent disability rating, effective August 5, 2011, the date the Veteran’s claim was received. 

As such, the Veteran’s claim for an earlier effective date for the assignment of a 70 percent rating is limited to any period of time on or after August 5, 2011 (the date of the claim for service connection).

With the date of claim established, the Board must now determine when entitlement to a 70 percent rating arose. 38 C.F.R. § 3.400(o). The term “date entitlement arose” is not defined in the current statute or regulation. Id. However, case law has interpreted the phrase as the date when the claimant met the requirements for the benefits sought. This is determined on a “facts found” basis. See 38 U.S.C. §5110 (a); see also McGrath v. Gober, 14 Vet. App. 28, 35 (2000). Here, the Veteran is requesting an earlier effective date for the award of a 70 percent rating. Thus, the date entitlement arose will be the date on which the Veteran’s psychiatric disability symptomatology either met or approximated the level of severity contemplated by a 70 percent rating.

Treatment notes report that the Veteran drove his wife to work, swam, and took care of his grandchildren during the week. His cognition and thought process were intact. However, the Veteran endorsed anxiety. The Veteran’s symptoms were well-managed with medication. In March 2017, the Veteran reported that he was improving in social situations, but that he still needed to be comfortable before he could engage socially. New situations were difficult, which caused his “mind to shut down.”

The Veteran was afforded his first VA examination in September 2014. The VA examiner confirmed the Veteran’s diagnosis of schizophrenia. The Veteran lived with his wife and daughter and endorsed good relationships. He last worked as an airport driver in 2010, but retired when he had heart bypass surgery. His schizophrenia caused difficulty in adapting to stressful circumstances, including work or a worklike setting. The Veteran was oriented to all spheres and was neatly attired. He had good eye contact and was cooperative and pleasant. His memory and cognition were intact. His affect was euthymic. The VA examiner commented that the Veteran was functioning relatively satisfactorily without significant emotional or psychiatric dysfunction. He concluded that the Veteran’s schizophrenia was mild and was productive of occasional decrease in work and social efficiency with intermittent periods of inability to perform occupational tasks, although he is generally functioning fairly well with normal routine behavior, self-care, and conversation.

In January 2016, the Veteran submitted a mental disorders disability benefits questionnaire that was prepared by L.P., a VA nurse practitioner. She confirmed the Veteran’s diagnosis of paranoid schizophrenia. She concluded that the Veteran’s schizophrenia was productive of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks although generally functioning satisfactorily with normal routine behavior, self-care, and conversation. She explained that the Veteran experienced moderate occupational and social impairment that made employment unlikely and difficult to maintain. The Veteran’s symptoms included flattened affect; speech intermittently illogical, obscure, or irrelevant; difficulty in understanding complex commands; impaired abstract thinking; difficulty in establishing and maintaining effective work and social relationships; and, difficulty adapting to stressful circumstances, including work or a work like setting. She found that the Veteran’s symptoms were well-controlled with medication. The biggest obstacles to employment were his blunted affect and concrete thinking.

The Veteran was afforded another VA examination in November 2016. The VA examiner confirmed the Veteran’s diagnosis of chronic paranoid schizophrenia. His symptoms were depressed mood, anxiety, suspiciousness, flattened affect, impaired abstract thinking, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, and difficulty in adapting to stressful circumstances, including work or a worklike setting. The VA examiner’s paranoid schizophrenia was productive of occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms, controlled by medication. The VA examiner found that there was no evidence that the Veteran’s schizophrenia had worsened since the 2014 VA examination.

In September 2017, the Veteran submitted a mental disorders disability benefits questionnaire prepared by Dr. H.A. She indicated that the Veteran had paranoid schizophrenia and unspecified dementia. Dr. H.A. found that it was impossible to differentiate the symptoms and occupational and social impairment caused by each diagnosed disorder. The Veteran’s symptoms were anxiety; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; mild memory loss, such as forgetting names, directions or recent events; impairment of short and long term memory, for example, retention of only highly learned material, while forgetting to complete tasks; flattened affect; circumstantial, circumlocutory, or stereotyped speech; speech intermittently illogical, obscure, or irrelevant; difficulty in understanding complex commands; impaired abstract thinking; difficulty in establishing and maintaining effective work and social relationships; difficulty adapting to stressful circumstances, including work or a work life setting; and, inability to establish and maintain effective relationships. The Veteran was unable to manage his financial affairs. She concluded that the Veteran’s paranoid schizophrenia and unspecified dementia were productive of occupational and social impairment with deficiencies in the most areas such as work, school, family relations, judgement, thinking, and/or mood.

Based upon the forgoing, the Board finds that the Veteran is entitled to an effective date of August 5, 2011, for the 70 percent evaluation for his schizophrenia. Throughout the appeal period, his schizophrenia has caused difficulty in adapting to stressful circumstances, including work or a worklike setting, which is contemplated under the 70 percent criteria for schizophrenia. VA treatment records indicate that new situations were particular problematic and caused the Veteran to shut down. Additionally, the symptoms reported by L.P. in January 2016 included speech intermittently illogical, obscure, or irrelevant and, difficulty adapting to stressful circumstances, including work or a work like setting which are contemplated by a 70 percent evaluation. The weight of the evidence demonstrates that since August 5, 2011, the Veteran’s schizophrenia has caused occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, which satisfies the 70 percent rating criteria. 

There are no unadjudicated claims of record for entitlement to service connection for schizophrenia. An effective date of August 5, 2011, but no earlier, for the 70 percent evaluation for schizophrenia is granted. 38 U.S.C. § 5110; 38 C.F.R. §§ 3.102, 3.400, 4.130, Diagnostic Code 9205.

2. Entitlement to an effective date prior to September 19, 2017, for the grant of a TDIU.

A TDIU may be assigned when a disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. § 4.16(a). If there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one disability must be rated at 40 percent or more, with sufficient additional disability to bring the combined rating to 70 percent or more. Id. 

Based upon the Board’s decision above, the Veteran meets the schedular requirements for TDIU, effective August 5, 2011.

The Veteran has maintained that he was unemployable due to the effects of his service-connected disabilities, particularly his schizophrenia, throughout the entire appeal period. 

Here, the central inquiry is whether the Veteran’s service-connected disabilities, alone are of sufficient severity to preclude him from obtaining and maintaining all forms of substantially gainful employment for the period before July 3, 2012. See Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). 

The Veteran was most recently employed as an airport driver in 2010 and retired after heart bypass surgery.

In January 2016, the Veteran submitted a mental disorders disability benefits questionnaire that was prepared by L.P., a VA nurse practitioner. She found that the impact of the Veteran’s symptoms on interpersonal skills made employment unlikely and difficult to maintain. The biggest obstacles to employment were his blunted affect and concrete thinking.

Additionally, as reported above, the all of the examinations cited above found that the Veteran’s schizophrenia caused difficulty in adapting to stressful circumstances, including work or a worklike setting. His treatment records include a notation that new situations cause the Veteran to shut down. 

The evidence establishes that the Veteran’s schizophrenia has precluded him from obtaining and maintaining all forms of substantially gainful employment since August 5, 2011, the effective date of his grant of service connection for schizophrenia. The record contains no unadjudicated claim for service connection of schizophrenia prior to August 5, 2011. 

 

DAVID L. WIGHT

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD R. R. Watkins, Counsel