# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-2196

ROBERT J. INGRAM, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 22, 2006,                          Decided     July 12, 2006    )

*Arie M. Michelsohn*, of Washington, D.C., with whom *Mark R. Lippman* of La Jolla, California was on the brief, for the appellant.

*Jeffrey Schueller*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Lavinia A. Derr* were on the brief, all of Washington, D.C., for the appellee.

Before MOORMAN, LANCE, and SCHOELEN, *Judges*.

LANCE, *Judge*: The appellant, veteran Robert J. Ingram, appeals through counsel a December 12, 2003, decision of the Board of Veterans' Appeals (Board) that denied entitlement to an effective date earlier than April 15, 1992, for the grant of compensation benefits under 38 U.S.C. § 1151 for residuals of a pneumonectomy. Record (R.) at 1-10. The parties each filed briefs, and the appellant filed a reply brief. Subsequently, the Court sua sponte ordered the parties to file supplemental briefs addressing what impact, if any, the holding of the United States Court of Appeals for the Federal Circuit (Federal Circuit) in *Andrews v. Nicholson*, 421 F.3d 1278 (Fed. Cir. 2005), has on this case. Thereafter, the Court heard oral arguments in the case. For the reasons that follow, the Court will vacate the Board decision and remand the matter for further proceedings.

## I. FACTS

The appellant served on active duty in the U.S. Marine Corps from September 1964 to September 1968. R. at 14. In April 1985, he underwent a right bronchoscopy and right pneumonectomy at a VA medical center in Salt Lake City, Utah. R. at 16-21. On May 8, 1986, the Los Angeles, California, VA regional office (RO) received the appellant's initial formal application for VA benefits. R. at 23-26. The appellant submitted his claim on VA Form 21-526, Veteran's Application for Compensation or Pension. R. at 23-26. Under the section entitled "Nature and History of Disabilities" and in response to item 24, entitled "Nature of sickness, disease or injuries for which this claim is made and date each began," the appellant wrote: "Feb.–1985–Right lung was removed, Salt Lake City, Utah, VA Hospital." R. at 24. He also provided responses to items 29A through 32E, under the section entitled "if you claim to be totally disabled," as well as responses to items 33A through 33E, and items 34A through 39B, which contained the instruction that these items should be completed only if the applicant is applying for "non-service-connected pension." R. at 25-26.

On August 12, 1986, the RO received the appellant's statement in support of claim wherein he stated:

> The removal of a vital organ (right lung) has greatly decreased my capacity for air–lung capacity–by fifty percent. Also[,] I am not capable under this condition to continue my normal life style.
>
> I attend[ed] four years of carpenter apprenticeship course at Orange Coast College in Coast Mesa, CA, 1972-1975, to obtain a skillful trade, but now under these adverse medical condition[s], I am unable to continue in my skillful trade.

R. at 34. On August 14, 1986, the RO denied a claim for non-service-connected pension benefits because he was not considered permanently unemployable. R. at 28. The appellant did not appeal that decision.

On April 15, 1992, the appellant filed a second VA Form 21-526, Veteran's Application for Compensation or Pension. R. at 50-53. Under the section entitled "Nature of sickness, disease or injuries for which this claim is made and date each began," the appellant wrote: "Right Pneumonectomy 1985[;] Esophageal fistual 1986[;] Gastrostomy Tube 1986." R. at 51. In June 1992, the appellant submitted correspondence to the RO asserting, inter alia, that as a result of the

1985 surgery and VA's negligence, he developed an esophageal leak. R. at 57. In June 1995, the RO denied his claim for benefits under 38 U.S.C. § 1151 for disability caused by VA treatment. R. at 352-56. However, on appeal in June 1999, the Board awarded compensation benefits under 38 U.S.C. § 1151 for residuals of a pneumonectomy based on an additional disability resulting from treatment in a VA facility. R. at 427-37. On January 20, 2000, the RO awarded a 60% disability rating, effective from October 7, 1996. R. at 456-59. The appellant filed a Notice of Disagreement (NOD) in May 2000, and the RO issued a Statement of the Case (SOC) in February 2002 assigning an earlier effective date of April 15, 1992. R. at 461, 470-77. The veteran perfected his appeal to the Board. R. at 479.

In the decision on appeal, the Board denied an effective date earlier than April 15, 1992. R. at 1-10. In denying the appellant's request for an earlier effective date, the Board determined, inter alia, that neither his May 1986 application for benefits nor his August 1986 statement in support of claim could have been construed as a claim for compensation benefits under 38 U.S.C. § 1151, and therefore, an effective date back to 1986 was not warranted. R. at 8-9. In reaching this conclusion, the Board stated: "There is nothing in the four corners of [the May 1986 application] that showed an intent that the veteran was claiming compensation benefits under the provisions of 38 U.S.C.[] § 1151. Specifically, there was no allegation of negligence or lack of proper skill, nor did the veteran make some other allegation of the surgery having been done improperly, as to the pneumonectomy that was done at that time." R. at 8. The Board further concluded that there was nothing in the appellant's August 1986 assertion that the surgery had reduced his lung capacity by 50 % "when read alone or with the VA Form 21-526, [that] would indicate an intent to file a claim for compensation benefits under the provisions of 38 U.S.C. § 1151. Again, the veteran was not claiming that the surgery was done improperly or that VA had committed negligence or showed lack of proper skill in performing the pneumonectomy." R. at 9. Based on this analysis, the Board concluded that the preponderance of the evidence was against finding that the veteran had filed a claim under section 1151 in 1986. R. at 9.

3

## II. THE PARTIES' ARGUMENTS

On appeal, the appellant asserts that the Board erred in 2003 when it determined that his May 1986 and August 1986 filings did not constitute informal claims for compensation benefits under 38 U.S.C. § 1151, which would have entitled him to the assignment of an earlier effective date. Appellant's Brief (Br.) at 3-9; *see Norris v. West*, 12 Vet.App. 413 (1999) (holding that when an RO fails to adjudicate a reasonably raised claim it remains pending). In this regard, he maintains that VA had a duty to sympathetically read his pro se pleadings and determine all potential claims raised by the evidence, and therefore, the Board erred when it treated his 1986 application as one exclusively for pension benefits. Br. at 4-5. In response, the Secretary maintains that there was no indication in either filing that demonstrated an intent by the appellant that he was claiming benefits under 38 U.S.C. § 1151. Secretary's Br. at 4-10.

On October 4, 2005, the Court sua sponte ordered the parties to file supplemental briefs addressing what impact, if any, the Federal Circuit's holding in *Andrews* has on this case. Specifically, the Court referred to *Andrews*' conclusion that "when VA violates *Roberson*[ *v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001),] by failing to construe the veteran's pleadings to raise a claim, such claim is not considered unadjudicated but the error is instead properly corrected through a [clear and unmistakable error (]CUE[)] motion." 421 F.3d at 1284. Both parties submitted supplemental briefs asserting that *Andrews* did not overrule the longstanding jurisprudence regarding pending claims and the statutory and regulatory framework underlying it. Both parties suggested that anything other than a narrow reading of *Andrews* would be unworkable because if the failure to construe a claim needs to be raised in the context of CUE, then under the facts of this case, the Court would have to find a finally adjudicated section 1151 claim in 1986–which is not shown in the record on appeal. Without any RO decision, there is no indication of the evidence of record concerning the claim, applicable law and regulation governing the claim, or any analysis applying the facts to the legal criteria–all inherent to any CUE challenge. CUE necessarily requires a *previous determination* that is final and binding. The Secretary's supplemental brief also points out that the Federal Circuit's own interpretation of *Andrews* suggests a narrow reading because in *Bingham v. Nicholson*, 421 F.3d 1346, 1349 (Fed. Cir. 2005), the panel stated: "[A]s we recently held in *Andrews*, the VA's failure

4

to consider *all aspects* of *a* claim does not render its decision non-final but instead 'is properly challenged through a CUE motion.'" (Emphasis added.)

At oral argument, the appellant maintained his prior position. However, without acknowledging or withdrawing his supplemental brief, the Secretary argued that this case is controlled by *Andrews* and that the appellant's theory cannot be considered because it can be properly raised only through a motion asserting CUE in the 1986 RO decision, and no argument based on CUE is before the Court. Thereafter, the appellant, pursuant to Rule 30(b) of this Court's Rules of Practice and Procedure, filed notices of supplemental authorities.

### III.  ANALYSIS

A. Issue Presented

The question presented to the Court is not whether the Secretary has a duty to sympathetically read a pro se veteran's filings to determine whether a claim has been raised. It is beyond question that the Secretary has such a duty and that it applies not just to total disability based on individual unemployability (TDIU) ratings, but also to any claim for benefits. *See Szemraj v. Principi*, 357 F.3d 1370 (Fed. Cir. 2004). The question presented to this Court is the proper procedural time and mechanism to assert an alleged failure of the Secretary to perform this duty. We begin with the proposition that as a Court we are reviewing specific decisions below that have been appealed to us. *See* 38 U.S.C. § 7252(a) (granting the Court jurisdiction "to review decisions of the Board"). Thus, in order for this Court to have jurisdiction to review an asserted error related to the failure to sympathetically read a claimant's filings, the claimant on appeal here must be asserting that the error occurred in the decision on appeal to the Court or that the error occurred in a final decision presented in the context of a CUE motion.

In the context of this case, we must determine whether the arguments raised on appeal are an improper attempt to use an appeal of the December 2003 Board decision [hereinafter "effective-date decision"] as a collateral attack on the 1986 RO decision. *See Cook v. Principi*, 318 F.3d 1334, 1337 (Fed. Cir. 2002) (en banc). In essence, we must determine whether the 1986 RO decision decided a section 1151 claim, which would now have to be the subject of a collateral attack, or whether the alleged section 1151 claim in 1986 was still pending at the time of the appellant's 1992

correspondence and, therefore, is part of the present claim stream including this direct review. If we determine that the 1986 RO decision decided a section 1151 claim, then we do not have jurisdiction to review the alleged error in that decision, as that decision is final and not part of the claim presently on direct appeal. *See DiCarlo v. Nicholson*, 19 Vet.App. __, __, No. 03-629, slip op. at 8 (May 10, 2006) (once the Secretary has made a finding of fact, a later decision reconsidering that finding outside of a certain circumstances (e.g., outside the context of CUE or reconsideration by the Board Chairman) is ultra vires and must be set aside); *Beverly v. Nicholson*, 19 Vet.App. 394, 405 (2005) (whether a sympathetic reading of filings raises a claim is a question of fact). If we determine that any potential claim was still pending and part of the claim stream that resulted in the Board decision on appeal, then we would have jurisdiction to address the substance of the appellant's argument.

B. Previously Established Law

*1. Effective-Date Decisions*

Section 5110(a) of title 38, U.S. Code, governs the assignment of an effective date for an award of benefits:

> [T]he effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

38 U.S.C. § 5110(a). The implementing regulation similarly states that the effective date shall be the date of receipt of claim or date entitlement arose, whichever is later, unless the claim is received within one year after separation from service. *See* 38 C.F.R. § 3.400 (2005).

A Board determination of the proper effective date for an award of VA benefits is a finding of fact reviewed under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Hanson v. Brown*, 9 Vet.App. 29, 32 (1996). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). The Court may not substitute its judgment for the factual determinations of the Board on issues of material fact merely because the Court would have decided those issues differently in the first instance. *Id.*

6

The Board is required to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991) (emphasis added); *see* 38 U.S.C. § 7104(a); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992). The Board is also required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990).

### 2. Pending Unadjudicated Claims

The Secretary defines a "pending claim" as "[a]n application, formal or informal, which has not been finally adjudicated." 38 C.F.R. § 3.160(c) (2005). This definition predates the creation of this Court. *See* 38 C.F.R. § 3.160(c) (1988) (same as current version). Consistent with this regulation, in several instances, this Court has held that a claim remains pending–even for years–if the Secretary fails to act on a claim before him. *See*, *e.g.*, *Norris*, 12 Vet.App. at 422 (concluding that TDIU claim reasonably raised in 1987 and 1989 remained pending at RO). Similarly, a decision may be rendered nonfinal when "the time for appealing either an RO or a Board decision did not run where the [Secretary] failed to provide the veteran with information or material critical to the appellate process." *Cook*, 318 F.3d at 1340 (discussing *Tablazon*, *Hauck*, *Kuo*, and *Ashley*, all *infra*).

In *Cook*, the Federal Circuit observed that this Court has tolled the period of time for a claimant to act after an RO decision, leaving the case in a nonfinal status when the Secretary has failed (1) to notify a claimant of the denial of a claim, *see Hauck v. Brown*, 6 Vet.App. 518, 519 (1994), (2) to mail a claimant a copy of the Board decision pursuant to 38 U.S.C.§ 7104(e), *see Ashley v. Derwinski*, 2 Vet.App. 307, 311 (1992), (3) to provide notice to the claimant of appellate rights, *see In the Matter of the Fee Agreement of Cox*, 10 Vet.App. 361, 375 (1997), *vacated on other grounds*, 149 F.3d 1360 (Fed. Cir. 1998), or (4) to issue the claimant an SOC, *see Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995); *Kuo v. Derwinski*, 2 Vet.App. 662, 666 (1992). All of these cases involved claims that had been explicitly decided by an RO in the first instance. Nonetheless, the essence of each case is that the time limitations pertaining to a veteran's right to appeal an

7

adverse decision do not begin to run until the veteran has received proper notice that his claim was denied.

In this line of cases, we have also held that a pending claim can be addressed when a subsequent claim for the same disability is explicitly adjudicated. In *Myers v. Principi*, 16 Vet.App. 228, 229 (2002), the appellant's claim for service connection for a back condition was denied in April 1958. Within one year of the mailing of notice of that decision, the appellant submitted a letter to the RO that the Secretary failed to recognize was an NOD as to that decision. *Id.* The RO subsequently denied three requests to "reopen" the 1958 denial and the appellant did not attempt to appeal them. *Id.* Finally, in 1994 the RO rejected another attempt to "reopen" the claim and that decision was appealed to the Board. *Id.* at 230. After a Board remand, the appellant was granted benefits and he appealed the effective date assigned. *Id.* On review of the effective-date decision, this Court held that the original 1958 RO decision never became final because the NOD had not been processed, notwithstanding the intermediate denials of the three claims to "reopen." *Id.* at 235. As a result, the Board's 1997 decision was a continuation of the appeal that began with the 1959 NOD and "the veteran's original service-connection claim was part of the current claim stream." *Id.* at 236. The Court remanded the matter to the Board to assign an appropriate effective date based on his original claim. *Id.* Hence, under *Myers*, if a claim is left pending, it can be addressed when a subsequent "claim" is processed.

### 3. CUE Motions

A claim of CUE is a collateral attack on a final decision by an RO or the Board. *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 696-98 (Fed. Cir. 2000), *cert. denied,* 532 U.S. 973 (2001). Each theory of CUE is a separate claim. *Andre v. Principi*, 301 F.3d 1354 (Fed. Cir. 2002) ("[E]ach 'specific' assertion of CUE constitutes a claim that must be the subject of a decision by the Board before the . . . Court [of Appeals for Veterans Claims] can exercise jurisdiction over it."); *Bradley v. Principi*, 14 Vet.App. 255, 256-57 (2001) (per curiam order) (stating that "each [CUE] theory alleged necessarily constitutes a separate claim").

The claimant must provide some degree of specificity as to what the alleged error is and, unless it is the kind of error that, if true, would be CUE on its face, "persuasive reasons must be given as to why the result would have been manifestly different but for the alleged error." *Fugo v.*

8

*Derwinski*, 6 Vet.App. 40, 44 (1993); *see also Bustos v. West*, 179 F.3d 1378, 1380-81 (Fed. Cir. 1999) (adopting this Court's interpretation of 38 C.F.R. § 3.105), *cert. denied*, 528 U.S. 967 (1999). To establish CUE in a final decision of an RO or the Board, a claimant must show that (1) either the correct facts known at the time were not before the adjudicator, or that the law then in effect was incorrectly applied, and (2) had the error not been made, the outcome would have been manifestly different. *Grover v. West*, 12 Vet.App. 109, 112 (1999). A mere disagreement with how the facts were weighed or evaluated is not enough to substantiate a CUE claim. *Damrel v. Brown*, 6 Vet.App. 242, 246 (1994). Nor does CUE include the otherwise correct application of a statute or regulation where, subsequent to the decision challenged, there has been a change in the interpretation of the statute or regulation. *Jordan (Timothy) v. Nicholson*, 401 F.3d 1296, 1298-99 (Fed. Cir. 2005); 38 C.F.R. § 20.1403(e) (2005). Moreover, the failure to address a specific regulatory provision involves harmless error unless it is shown that the outcome would have been "manifestly different." *Fugo*, 6 Vet.App. at 44. "Silence in a final RO decision made before February 1990 cannot be taken as showing a failure to consider evidence of record." *Eddy v. Brown*, 9 Vet.App. 52, 58 (1996).

### C. Theories of the Case

*1. Appellant's Theory: The effective-date decision incorrectly identified the claim that was granted.*

The essence of the appellant's theory is that the Board decision presently on appeal to the Court erred during the assignment of his effective date when the Secretary incorrectly identified which of his submissions was the claim that led to the award of benefits. He maintains that the April 1992 document that the Secretary identifies as the relevant claim under section 5110 was not a new claim but merely correspondence pertaining to the pending and unadjudicated May 1986 claim. This theory draws support from 38 C.F.R. § 3.160(c), *Myers*, and the numerous decisions that hold when an appellant submits a claim or takes an action on a claim that puts the ball into the Secretary's court, it remains there–possibly for years–until the Secretary takes appropriate action to return the onus to the claimant to act within the time periods specified by statute and regulation. *See Tablazon*, *Hauck*, *Kuo*, and *Ashley*, all *supra*.

*2. Secretary's Theory: The 1986 RO decision sub silentio denied the appellant's section 1151 claim.*

The essence of the Secretary's theory is that even if the May 1986 application raised a claim under section 1151, the August 14, 1986, RO decision that denied non-service-connected pension

benefits also denied the section 1151 claim sub silentio. Accordingly, there was no claim pending prior to 1992 and the proper procedure for raising the issue is for the appellant to file a motion asserting CUE in the 1986 RO decision. As no such motion has been filed or decided by the Board, the Secretary argues that this Court lacks jurisdiction to consider the appellant's theory of error as part of a direct review of the decision that assigned an effective date to the appellant's 1992 claim. The Secretary draws support for this theory from the Federal Circuit's statement in *Andrews*: "when the VA violates *Roberson* by failing to construe the veteran's pleadings to raise a claim, such claim is not considered unadjudicated but the error is instead properly corrected through a CUE motion." 421 F.3d at 1284. In essence, the Secretary is asserting that the appellant's attempt to raise the alleged error in this separate proceeding is an unauthorized collateral attack outside the scope of those permitted by Congress. *See Cook*, 318 F.3d at 1341 (overruling the decision in *Hayre v. West*, 188 F.3d 1327 (Fed. Cir. 1999), that "grave procedural error" prevents a decision of the Secretary from becoming final).

### *3. The Conflict Between the Theories*

The two theories outlined above cannot coexist because they are based on inconsistent factual premises. The first theory relies on the proposition that there was no decision on the alleged 1986 section 1151 claim while the second theory relies on the 1986 RO decision as a final decision on a section 1151 claim, which decision must be challenged for CUE. In other words, either the appellant in this case is trying to bypass the congressionally-authorized procedures for collaterally attacking the final 1986 RO decision or the Secretary is incorrect to assert that the appellant must attempt to collaterally attack a decision that is irrelevant to the alleged section 1151 claim that was pending under § 3.160(c) until 1992 and is now on direct appeal.

Accordingly, the question presented is: Assuming a claim has been reasonably raised by a claimant, is that claim denied sub silentio by an RO decision that should have adjudicated it, or does that claim remain pending under § 3.160(c) and *Myers* until it is explicitly adjudicated?

### D. Resolving the Conflict

For the reasons listed below, we conclude that a reasonably raised claim remains pending until there is an explicit adjudication of the claim or an explicit adjudication of a subsequent "claim" for the same disability. *See Myers* and 38 C.F.R. § 3.160(c), both *supra*. If there is no explicit final

denial of the original claim prior to the granting of the subsequent claim, then, as part of his or her appeal of the effective-date decision, an appellant can raise the fact that he or she filed the original claim for the same disability at an earlier date than the claim which was subsequently granted.

We begin by looking at the crux of the problem: the apparent inconsistency between *Norris* and *Andrews*. At oral argument, the Secretary asserted that *Andrews* had overruled *Norris*. Based on the analysis below, the Court disagrees. While those decisions discuss related concepts, they are factually distinguishable from each other and from the other relevant decisions in this area.

*Norris* is the first of the decisions at issue. In *Norris*, the appellant filed a claim for an anxiety disorder. 12 Vet.App. at 414. The claim was granted and he was assigned a schedular rating and an effective date. *Id.* Two later decisions of the Board (in 1980 and 1985) granted an increased schedular rating and denied a TDIU rating. *Id.* Following those decisions, the appellant underwent numerous hospitalizations, each of which resulted in an RO decision that awarded the appellant a temporary total disability rating for the period of his hospitalization and "continued" his 70% schedular rating thereafter. *Id.* at 415-16. The evidence at the time of the RO decisions from June 1987 included evidence of unemployability. *Id.* However, the issue of TDIU was not considered or decided by the RO. After the RO decisions became final, the appellant filed a motion to revise the June 1987 and February 1989 RO decisions on the basis of CUE because they failed to adjudicate TDIU. *Id.* at 416.

The Court determined that where, as in *Norris*, the claimant has already been granted service connection for a disability and has a schedular rating that meets the minimum criteria of 38 C.F.R. § 4.16(a) (i.e., he had at least a 60% rating for his psychiatric disorder) and a VA examination report indicated unemployability due to that disability, the claimant has made an informal claim for a rating increase, to include an evaluation as to a TDIU rating, and VA must adjudicate TDIU. *Id.* at 420-21. The Court concluded that such an informal claim had been raised: "We now hold as a matter of law that a TDIU claim was reasonably raised to the RO and was not adjudicated. Thus, there is no final RO decision on this claim that can be subject to a CUE attack." *Id.* at 422. We note that *Norris* held that the TDIU claims reasonably raised in 1987 and 1989 remained pending at the RO, and did not reach the issue of the ultimate fate of the appellant's claim. The holding of *Norris* was "the Board decision determining that CUE was not committed in [the] 1987 and 1989 RO decisions is

11

AFFIRMED for the reasons that are contained herein." *Id.* (capitalization in original). The practical conclusion of *Norris* was that, following the VA medical examination that was conducted to determine whether the veteran's condition had improved in order to determine whether the assigned disability rating should be decreased or continued, the 1987 and 1989 RO decisions did not adjudicate the informal claims for a TDIU rating raised by that evidence when they "continued" or "resumed" the previously awarded 70% rating after the hospitalization. *Id.* at 415-16.

By comparison, in *Andrews*, the appellant was granted service connection and assigned a disability rating for post-traumatic stress disorder (PTSD) in a 1983 RO decision. 421 F.3d at 1280. Although there was evidence that the appellant was unemployable, the RO did not decide whether the appellant was entitled to TDIU. *Id.* Similarly a 1985 RO decision increasing the appellant's disability rating did not consider whether the appellant was entitled to a TDIU rating. *Id.* In 1995, the appellant filed a motion asserting CUE in the 1983 and 1985 decisions for failing to apply correctly the disability schedule. *Id.* "At no time [in the proceedings before the Secretary] did [the appellant] argue that the RO in 1983 or 1985 had erred in failing to consider Andrews as having raised a TDIU claim." *Id.*

The Secretary argued to the Federal Circuit "that, even if the VA had erred in failing to construe the veteran's pleadings to raise a TDIU claim in the 1983 and 1985 proceedings, such an error should not be considered on a CUE motion. Rather, the government urges that the TDIU claim is still pending before the RO awaiting adjudication, and that the Veterans Court and this court are without jurisdiction because there is no Board decision for us to review." *Id.* at 1281. The Federal Circuit replied: "We disagree; the government's position is contradicted by our decision in *Roberson*. . . . [W]e clearly held in *Roberson* that the VA's failure to consider a TDIU claim in this manner is properly challenged through a CUE motion." *Id.* Nonetheless, the Federal Circuit in *Andrews* concluded that the appellant had not asserted the potential TDIU claim to the Board as a basis for finding CUE in the 1983 and 1985 RO decisions. *Id.* at 1284. As the only CUE theory asserted to the Board was an error in the schedular rating assigned, the TDIU theory of CUE was not reviewable until properly presented to and decided by the Board. *Id.*

*Andrews* relies on the Federal Circuit's decision in *Roberson*, which also involved a TDIU claim. *Roberson* stated that *Norris* "is both on-point and informative." 251 F.3d at 1383. The

12

Federal Circuit further stated that "[t]he facts of *Norris* are similar to the present case" (both appellants received 70% disability ratings for a mental disorder) but concluded that "the facts of *Norris* are distinguishable from [the appellant's] situation" because in *Norris* informal claims, which were found to raise TDIU, were made subsequent to the initial rating determination whereas in *Roberson* TDIU was found to have been raised as part of the initial claim for service connection (i.e., assertion of unemployability made prior to the initial RO decision that granted service connection and awarded a rating). *Id.* After concluding that the cases were factually distinguishable, *Roberson* went on to say:

> *Unlike Norris*, Roberson's original medical disability claim was decided by the RO and is the claim for which Roberson seeks the highest rating possible. Ratings decisions by the DVA are deemed "final and binding . . . as to conclusions based on the evidence on file at the time the [DVA] issues written notification of the decision." 38 C.F.R. § 3104(a) (1994). *But see Hayre v. West*, 188 F.3d 1327, 1333 (Fed. Cir. 1999) ("[a] breach of duty to assist in which the VA failed to obtain pertinent [evidence] specifically requested by the claimant and failed to provide the claimant with notice explaining the deficiency is a procedural error ... that vitiates the finality of an RO decision for purposes of a direct appeal"). Roberson has not alleged that the VA failed to obtain pertinent evidence. *Thus, Roberson's claim has been finally decided by the RO*.

251 F.3d at 1383-84 (emphasis added). Accordingly, *Roberson* expressly considered and did not overrule *Norris*. Rather, it found TDIU had been denied by the RO decision on the appellant's initial disability rating after he had requested "the highest rating possible" disability rating. There is no suggestion in *Roberson* that a decision on a wholly different claim could be regarded as a final decision on a claim not mentioned in that decision. Rather *Roberson* was narrowly written to leave the "on-point and informative" decision in *Norris* intact. *Roberson*, 251 F.3d at 1383.

The *Andrews* court did not disagree with *Norris*, and its decision stated only that a claimant must raise the issue of an alleged failure to address TDIU through a collateral attack, such as a motion for revision based on CUE, when evidence regarding TDIU was before the RO prior to its decision on a claim that sought a schedular rating and that schedular rating decision was not directly appealed. *See DiCarlo*, 19 Vet.App. at __, slip op at 5-7 (discussing the types of collateral attack authorized to challenge a decision by the Secretary). None of these decisions, however, suggests that it is possible for an RO decision on one claim to be regarded as a denial of a wholly different claim. Hence, *Andrews* held, based on the facts presented, that a collateral attack must be used when, as in

*Roberson*, a TDIU rating is not addressed as part of a decision on a claim that sought a schedular rating and that schedular rating decision is not directly appealed.

This interpretation of *Norris*, *Roberson*, and *Andrews* is consistent with the other decisions of the Federal Circuit in this area. Twelve days after *Andrews* was decided, the Federal Circuit said in *Bingham* "as we recently held in *Andrews v. Nicholson*, 421 F.3d 1278 (Fed. Cir. 2005), the VA's failure to consider *all aspects of a claim* does not render its decision non-final but instead 'is properly challenged through a CUE motion.'" 421 F.3d at 1349 (emphasis added). *Bingham* applied this principle to hold that a decision that denied service connection for hearing loss was a final decision as to every theory of entitlement for that benefit, including theories of presumptive service connection. *Id.* at 1348-49. Specifically, the Federal Circuit in *Bingham* held that a 1950 Board decision denying the appellant's claim for hearing loss was a final decision on every theory under which that benefit could be granted. *Id.* Therefore, even if the Board failed to consider the possibility of presumptive service connection when it denied direct service connection, the appellant did not have a pending claim for service connection on a presumptive basis because that was a different theory, not a different claim. We specifically note that *Bingham* did not suggest that the Secretary's failure to decide a reasonably raised claim could not lead to a pending and unadjudicated claim.

In addition to *Bingham*'s interpretation of *Andrews* and *Andrews*' reliance on *Roberson*, we note that the Federal Circuit has issued two other major cases discussing the Secretary's duty to sympathetically read a veteran's pleadings in determining whether an informal claim was raised. We find *Moody v. Principi*, 360 F.3d 1306 (Fed. Cir. 2004), instructive. In *Moody*, a 1996 RO decision granted TDIU and assigned a 1994 effective date because, according to the RO, that was the first time he claimed that his psychiatric disorder was secondary to his service-connected prostatitis. 360 F.3d at 1309. In 1998, he filed a CUE motion as to the 1996 effective-date decision–he argued that it was CUE not to find an earlier informal claim for secondary service connection based on his prior benefits claims and the evidence in the record at the time. *Id.* The Board rigorously applied the 38 C.F.R. § 3.155 (2005) informal claim regulation in assessing whether there was an earlier claim and rejected his CUE motion, and, on appeal to the Court, the appellant argued for a remand for the Board to consider *Roberson*. The Federal Circuit held that "[t]he question is whether the

14

B[oard], as required by *Roberson*, sympathetically read Mr. Moody's filings prior to June 24, 1994, in determining whether Mr. Moody made an informal claim for secondary service connection for his psychiatric disorder." *Moody*, 360 F.3d at 1310. Based on this ruling, the Federal Circuit remanded the matter to address, using the correct legal standard set forth in *Roberson*, the factual issue of whether a claim had been raised. *Id.* To be clear, while *Moody* did involve a CUE motion, it was a CUE motion that asserted error *in the effective-date decision*, not in a decision that allegedly denied the claim sub silentio. Accordingly, *Moody* also supports the proposition that raising a pending unadjudicated claim theory in connection with a challenge to the effective-date decision is procedurally proper.

We also note the Federal Circuit's decision in *Szemraj v. Principi*, supra, does not favor a particular theory or procedure for dealing with unadjudicated claims. In *Szemraj*, the appellant alleged CUE in a 1989 Board decision that denied service connection for a psychosis in service. The theory of the CUE motion was that the 1989 Board decision "failed to apply the one-year post-service presumption of service connection provided by 38 C.F.R. §§ 3.307 and 3.309" when it denied his psychosis claim. *Szemraj*, 357 F.3d at 1372. Our decision held that the *Roberson* duty to sympathetically read the pleadings of a veteran did not apply to CUE motions. *Szemraj*, 357 F.3d at 1373. The Federal Circuit reversed this legal conclusion and held that "VA has a duty to sympathetically read a veteran's allegations in all benefit claims." *Id.* However, the Federal Circuit went on to clarify:

> [A]part from the requirement that a pro se veteran's pleadings be read sympathetically, our decision in *Roberson did not change the well-established legal standard for determining the existence of CUE in RO and BVA decisions. See Cook*, 318 F.3d at 1344. . . . In *Cook* we held *en banc* that in order to constitute CUE, the alleged error must be both "outcome determinative" and "based upon the evidence of record at the time of the original decision. 318 F.3d at 1344. . . . Contrary to the appellant's argument, *Roberson* does not require VA to reconcile the conflicting evidence before adjudication, nor does it require the agency to develop evidence on the veteran's theory. To construe *Roberson* as requiring factual development as a matter of course would be to effectively overrule our decision in *Cook* that the failure to assist in developing the evidentiary record cannot constitute CUE. *See id.*

*Szemraj*, 357 F.3d at 1375-76 (emphasis added). The Federal Circuit then affirmed the outcome of this Court's decision after concluding that our legal error was harmless because the appellant had not

15

actually made an allegation that the Secretary had failed to give a sympathetic reading to his pleadings in the decision that allegedly contained CUE.

*Szemraj* is distinguishable from this case because the CUE motion on appeal was attacking a prior decision that explicitly denied the claim at issue. The original decision denied a claim for service connection for psychosis and the CUE motion asserted that the denial of service connection for psychosis was in error because it failed to consider a specific theory of entitlement. *Szemraj*, 357 F.3d at 1372. *Szemraj* did not involve the failure to adjudicate a separate claim that had been reasonably raised and nothing in *Szemraj* speaks to the appropriate theory or procedure to employ when the Secretary fails to adjudicate an entirely separate claim. *Szemraj* stands only for the proposition that the duty to sympathetically read a veteran's pleadings also applies to those pleadings that assert CUE.

Additionally, we note that the Federal Circuit's en banc decision in *Cook* endorsed our pending claim case law. As discussed in Part III.B.2., supra, the en banc Federal Circuit in *Cook* favorably reviewed our decisions in *Tablazon*, *Hauck*, *Kuo*, and *Ashley* and endorsed our holdings that a procedural default clock does not run while the ball is in the Secretary's court. 318 F.3d at 1340. In overruling the holding in *Hayre* that "grave procedural error" would prevent a decision of the Secretary from becoming final, *see Hayre*, 188 F.3d at 1333, the en banc Federal Circuit in *Cook* concluded that our case law on pending claims was distinguishable. The en banc Federal Circuit concluded that the appellant in *Hayre*–in spite of any "grave procedural error"–had received notice of the adjudication and an opportunity to appeal. *Cook*, 318 F.3d at 1341. Whereas, our pending claim case law illustrated situations where the appellant had been denied his appellate rights. *Id.*

If we were to accept the Secretary's invitation to read *Andrews* broadly as endorsing a general doctrine of sub silentio denial, we would run afoul of this distinction recognized in *Cook*. It is reasonable to say that an appellant who receives a disability rating that is less than 100% has notice of how his condition has been rated and the opportunity to appeal the rating decision. Even if he does not have a clear understanding of the TDIU aspect of a rating decision, he does have a clear statement of which disability is being rated and the fact that the Secretary has declared it to be less than 100% disabling. Hence, an appellant's ignorance of a particular legal theory for a higher rating does not preclude him from understanding that an appealable decision has been made concerning

16

his claim. However, by urging us to adopt a doctrine of general sub silentio denials, the Secretary is suggesting in this case that the denial of a non-service-connected pension claim in 1986 gave the appellant in this case adequate notice and opportunity to appeal the 1986 RO decision as to a section 1151 claim. This suggestion goes too far. A section 1151 claim, which treats a disability as if it were service-connected, is in no way an aspect of a claim for a non-service-connected pension.

Reading *Andrews* as broadly as the Secretary suggests would run afoul of the due process concerns voiced by the en banc Federal Circuit in *Cook* and by this Court in *Thurber v. Brown*, 5 Vet.App. 119, 123 (1993), where we noted that "VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process." *See* 38 U.S.C. §§ 5104(a) (requiring the Secretary, when making a decision affecting the provision of benefits to a claimant, to "provide to the claimant . . . notice of such decision"), 5104(b) (requiring the Secretary, when denying a benefit sought, to provide a statement of the reasons for the decision and a summary of the evidence considered); 38 C.F.R. § 3.103(b) (2005) ("Claimants and their representatives are entitled to notice of any decision made by VA affecting the payment of benefits or the granting of relief."). Given that *Andrews* gave no consideration as to the profound consequences of adopting a general doctrine of sub silentio denials, we do not think it appropriate to suggest that it meant to cast doubt on the Federal Circuit's decision in *Cook*.

Aside from the support we find in prior case law, the pending-unadjudicated-claim theory is clearly a preferable approach to administering the veterans benefits system. Treating the Secretary's failure to sympathetically read and adjudicate a reasonably raised claim as a pending claim benefits veterans because it protects their appellate rights and works no hardship on the Secretary in that it requires only that each claim be specifically addressed. If a veteran is aware of a particular benefit and makes an unambiguous claim for it, the Secretary's duty to sympathetically read his submissions is irrelevant. That duty primarily helps those veterans who have not clearly articulated that they are seeking a particular benefit. It is illogical to expect such veterans to immediately recognize when the Secretary has failed to adjudicate a reasonably raised claim because it is ignorance of the intricacies of potential claims that makes the duty necessary. Hence, if the law equates a VA failure to adjudicate a reasonably raised claim to a sub silentio denial of the claim, then it is unlikely that the veteran would have sufficient notice of the disposition of his claim to assert

17

error on direct appeal. Instead, any error in the adjudication of that claim would have to be raised in a CUE motion. *See* 38 C.F.R. § 20.1403(c) (2005) (defining CUE as "a very specific and rare kind of error. It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error"); *see also Moody*, *supra*.

Moreover, even a savvy veteran may not be aware that there is a disagreement as to which document raised a claim until after an effective date is assigned. Veterans benefits litigation is frequently piecemeal. A veteran will submit a continuous stream of evidence and correspondence. Rather than holding all the claims until every one is ready to be decided, the Secretary will develop and decide multiple claims separately–often over a period of years. A savvy veteran could easily submit what he believes to be a claim and receive from the Secretary an adjudication of a previously raised claim for the same disability. The veteran could then submit more correspondence on the claim he was trying to raise and receive a request from the Secretary for evidence or to report for an examination. There could be years of intervening appeals, remands, and revised decisions before the claim is actually granted and the assignment of the effective date reveals that the Secretary did not recognize the initial submission as a claim for the benefit. In the meantime, the decision that sub silentio denied the claim that the appellant alleges was reasonably raised has become final and can only be challenged for CUE. Once again, the veteran would have been denied direct review of the sub silentio denial because he had no reason to know that was an issue at the time he could have appealed that decision. Accordingly, accepting a doctrine of sub silentio denials has grave implications for due process and protecting the appellate rights of veterans.

Of course, not every claim for a benefit will be granted. Accordingly, if a claim is denied, it is often irrelevant when it was first raised. There does not need to be any decision on the issue of when the claim was first raised unless and until it actually becomes relevant to an award of benefits. If a claim is granted, however, the date the claim was first raised is relevant to determining the effective date. Under *Myers*, the appellant can argue that an earlier claim for the benefits should be considered part of the same claim stream that eventually resulted in the award of benefits for the purpose of establishing the effective date. If a veteran believes that he has a pending claim for a benefit that has not received an initial decision, the veteran can unambiguously inform the Secretary

18

that a particular benefit is being sought. The Secretary must then decide entitlement to the benefit and-if relevant-address the issue of when the claim was first raised. *See DiCarlo*, 19 Vet.App. at __, slip op. at 7 (holding that the finality of a specific claim is an issue that can be raised when relevant, but is not a procedure or claim in and of itself).

This is not to say that the question of when a claim was raised will never be relevant before an effective date is assigned. It may be relevant, for example, to determining which version or versions of the law are relevant to the substantive question of entitlement. *See Rodriguez v. Nicholson*, 19 Vet.App. 275, 288-89 (2005) (discussing considerations relevant to determining which version of a statute or regulation should apply when there is a change during the pendency of a case). However, it makes little sense to adjudicate the issue of when a claim was raised unless that issue will have some practical effect. In many cases, deciding whether or not a claim was reasonably raised below on the possibility that it might be relevant to a future effective-date determination amounts to nothing more than an advisory opinion. *See Waterhouse v. Principi*, 3 Vet.App. 473, 474 (1992) (the Court does not issue advisory opinions); *cf. Mintz v. Brown*, 6 Vet.App. 277, 281, 283 (1994) (Board lacked jurisdiction to entertain appellant's claim where he was seeking an advisory opinion).

Finally, we do not hold that the Secretary's failure to adjudicate a reasonably raised claim can never be the basis for a CUE motion. Rather it can be the basis of a CUE motion as to a final decision of the Secretary where the issue was relevant to a decision actually made. As discussed above, *Moody* is a good example. Because the effective-date decision in that case had become final, the appellant properly alleged CUE in the effective-date decision on the theory that it failed to correctly identify which document was the appellant's claim for purposes of assigning an effective date under section 5110. The appellant's theory in this case is no different from the theory of the appellant in *Moody*. The only difference is that, as a matter of procedure, the appellant here has directly appealed his effective-date decision rather than allowing it to become final. *See Beverly*, 19 Vet.App. at 406 ("It would be illogical and unfair to require the appellant to wait until the Board decision is final and then face the high burden of proving CUE when any other error can be addressed immediately and more favorably when raised in a timely manner.")

19

Based on the above, we conclude that the Federal Circuit has neither overruled the pending-unadjudicated-claim doctrine articulated in *Norris* nor created a general doctrine of sub silentio denials. Therefore, the appellant is correct that we have jurisdiction over his appeal because it is not a collateral attack on a prior final RO or Board decision.

E. Application of Law to Fact

Now that we are satisfied that the appellant is properly raising his assertion of error against the effective-date decision, we must review the Board's findings and conclusions below. The Board reviewed the 1986 filings and found that nothing in the four corners of either document could be construed as an intent to claim section 1151 benefits R. at 8-9. The Board focused on whether the appellant had alleged negligence or a lack of proper skill on the part of the VA physicians and whether he had expressed an intent to apply for section 1151 benefits. R. at 8-9. Both of these forms of analysis were legally incorrect. As the Federal Circuit explained in *Hodge v. West*, 155 F.3d 1356, 1362-63 (Fed. Cir. 1998), when it announced the sympathetic-reading requirement based on the legislative history of the Veterans' Judicial Review Act and Veterans' Benefits Improvement Act of 1988, Congress intended to preserve the nonadversarial nature of the VA system wherein the Secretary provides claimants with assistance in submitting and substantiating claims. Although there is no statutory or regulatory definition of "sympathetic reading," it is clear from the purpose of the doctrine that it includes a duty to apply some level of expertise in reading documents to recognize the existence of possible claims that an unsophisticated pro se claimant would not be expected to be able to articulate clearly. *Cf. Andrews*, 421 F.3d at 1283 (holding that the duty to sympathetically read submissions does not apply to pleadings through counsel).

As to the Board's suggestion that the appellant was required to allege negligence or lack of skill, measuring the appellant's submissions against a strict pleading requirement is fundamentally inconsistent with the concept of a sympathetic reading and, therefore, constituted legal error by the Board. The application of such a pleading requirement violates the duty to sympathetically read submissions because it required the appellant to demonstrate a level of sophistication that would render moot the duty to sympathetically read his pleadings. In other words, it is precisely because unsophisticated claimants cannot be presumed to know the law and plead claims based on legal elements that the Secretary must look at the conditions stated and the causes averred in a pro se

20

pleading to determine whether they reasonably suggest the possibility of a claim for a benefit under title 38, regardless of whether the appellant demonstrates an understanding that such a benefit exists or of the technical elements of such a claim. The Board's suggestion that the appellant was required to articulate a specific intent to "claim . . . compensation benefits under the provisions of 38 U.S.C.A. § 1151" is similarly flawed. R. at 8, 9. The duty to sympathetically read exists because a pro se claimant is not presumed to know the contents of title 38 or to be able to identify the specific legal provisions that would entitle him to compensation. Again, there would be no need for the duty to sympathetically read pleadings if pro se claimants had encyclopedic knowledge of veterans law.

Finally, we hold that it was also error for the Board to suggest that it was limiting the material being reviewed to the "four corners" of the application and the statement in support of the claim. *Cf. EF v. Derwinski*, 1 Vet.App. 324, 326 (1991) (holding that VA's duty to give a liberal reading to an appeal of an RO decision applies to "all documents or oral testimony submitted prior to the B[oard] decision"). While it is not clear in the record that there were any other submissions by the appellant in connection with his 1986 application, the Board's articulation of a "four corners" standard for reviewing the appellant's pleadings is overly formal in a system where the Secretary must take a sympathetic view of an appellant's pleadings to determine whether a claim has been made.

In summary, a sympathetic reading of the appellant's pleadings cannot be based on a standard that requires legal sophistication beyond that which can be expected of a lay claimant and must consider whether the appellant's submissions, considered in toto, have articulated a claim. In this case, it is premature for us to determine whether the Board's finding was clearly erroneous because its denial was based on the application of overly strict requirements that were inconsistent with the Secretary's duty to sympathetically read pro se pleadings. Although we need not formulate a specific standard at this time, we note that the duty to sympathetically read must be based on reasonable expectations of a pro se claimant and the Secretary. It is the pro se claimant who knows what symptoms he is experiencing that are causing him disability, *see Cintron v. West*, 13 Vet.App. 251, 259 (1999) ("[c]ertainly, the RO had no obligation to read the mind[] of the veteran"), and may assert potential causes of the disability even if he is not competent to make a medical diagnosis, *see Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992) (holding that lay person is not competent to offer

evidence that requires medical knowledge). On the other hand, it is the Secretary who knows the provisions of title 38 and can evaluate whether there is potential under the law to compensate an averred disability based on a sympathetic reading of the material in a pro se submission.

On remand, the Secretary must consider whether the May 8, 1986, application and the appellant's submissions in support of that application raised a claim for benefits under section 1151 based on a sympathetic reading of those documents that does not require conformance with legal pleading requirements or intent to seek benefits under section 1151 explicitly. In addition, such consideration must be undertaken in accordance with regulations, law, and provisions in the VA Adjudication Procedure Manual that may be applicable to his 1986 filings, *see*, *e.g.*, 38 C.F.R. §§ 3.151 (1985 & 2005) ("claim . . . for pension may be considered to be claim for compensation"); 3.155 (1985 & 2005) (discussing informal claim); VA Adjudication Procedure Manual (M21-1), para. 21.01(a) (1983-1990) ("VA Form 21-526, Veterans Application for Compensation or Pension") (VA to consider "VA Form 21-526 properly completed as to items 1 through 40 and signed by the veteran in item 42" as "a claim for either disability compensation or pension, or both, depending upon the manner of preparation and intent of the claimant, as provided below"); M21-1, Part III, para. 2.02(a) (2005) (essentially same as above but without reference to item numbers on Form 21-526); M21-1, para. 21.01(d) (1983-1990) ("Combined Claim for Compensation and Pension") ("If the information specified" in both subparagraphs b (regarding claims for compensation) and c (regarding claim for pension) above is furnished, VA is to consider it "a claim for both benefits," and "[i]f there is any doubt as to which benefits is sought," VA is to adjudicate "both phases of the claim"); M21-1, Part III, para. 2.02(d) (2005) (essentially same). If the Board concludes that such a claim was raised, it must decide whether that claim was ever adjudicated or whether it was still pending at the time of the April 15, 1992, correspondence from the veteran. Based on its factual findings, the Board must address whether the appellant is entitled to an effective date earlier than April 15, 1992, for the grant of benefits under section 1151.

## IV. CONCLUSION

Accordingly, the December 12, 2003, Board decision is VACATED and the matter is REMANDED for further proceedings consistent with this opinion.